**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MARIE-GISELE KAMANOU-GOUNE,

              Plaintiff,

       -against-

ANTONIO GUTERRES, SECRETARY-
GENERAL, UNITED NATIONS; MRS.
ROSEMARIE MCCLEAN, CHIEF
EXECUTIVE OF PENSION
ADMINISTRATION, UNJSPF,

              Defendants.

25-CV-6430 (GBD)

ORDER OF DISMISSAL

GEORGE B. DANIELS, United States District Judge:

Plaintiff, who is appearing *pro se*, brings this action under this Court's federal question jurisdiction, alleging that Defendants failed to rehire her due to her disability and thereafter denied her access to her retirement benefits. She names as defendants Antonio Guterres, the Secretary-General of the United Nations; and Rosemarie McClean, the Chief Executive of Pension Administration with the United Nations Joint Staff Pension Fund ("UNJSPF"). This Court liberally construes the complaint as asserting claims under Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 *et seq.*, related to Defendants' alleged discrimination on the basis of disability, and under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, related to Defendants' alleged denial of access to retirement benefits. By separate order, this Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees.

This Court dismisses the complaint for the reasons that follow.

**LEGAL STANDARD**

This Court must dismiss an IFP complaint, or portion thereof, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).  This Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).  While the law mandates dismissal on any of these grounds, this Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted).

**BACKGROUND**

The following facts are drawn from the complaint.[1]  In or around 1989, Plaintiff accepted an unpaid internship "to assist [the United Nations'] Office of the Director of the Statistical Office . . . with its 1983 World Programme of Industrial Statistics."  (ECF No. 1, at 8.)  A few weeks later, Plaintiff began training staff at the United Nations' Industrial Statistics Section in the use of "computer routines necessary to automate the tabulations of the World Programme of International Industrial Statistics." (*Id.*)  The United Nations later offered Plaintiff "several consecutive short and fixed-term contracts as Associate Systems Analyst," which she accepted. (*Id.*)

In 1995, the United Nations granted her a "Permanent Appointment," although for reasons unknown to Plaintiff, she "was degraded to Associate Programmer at Level P-2 step VI." (*Id.* at 9.)  Later that year, Plaintiff requested leave without pay to return to her academic pursuits. (*Id.*)

---

[1] This Court quotes from the complaint verbatim. All spelling, grammar, and punctuation are as in the original unless noted otherwise.

She thereafter entered a Ph.D. program in biostatistics at the University of California, Berkeley. (*Id.*) Two years later, she "resumed [her] employment in New York." (*Id.*)

Seventeen years later, in November 2021, Plaintiff contracted COVID-19, became ill, and "returned to [her] home country (Cameroon) for family support and continued treatment." (*Id.*) In October 2022, the National Veteran Hospital in Cameroon completed a medical report that "recommended that [Plaintiff] be granted Disability benefits or, alternatively, early retirement benefits." (*Id.*) Shortly after, Plaintiff returned to New York and submitted the medical report to the United Nations Medical Service. (*Id.*) "In response, [Plaintiff] was told that [she] was an 'ex staff member.'" (*Id.*) She has not been allowed to return to work at the United Nations ever since. (*Id.*)

On July 28, 2025, Plaintiff contacted the UNJSPF and asked "to be paid [her] retirement benefits." (*Id.* at 10.) In response, UNJSPF staff informed Plaintiff that "there is no client in the Fund's system with [her] name." (*Id.*) Plaintiff surmises that there could not have been a clerical error related to the spelling of her name. (*Id.*)

Plaintiff seeks unspecified relief. Specifically, she writes: "I am not in the position to present a figure for the relief sought. I ask to be allowed to provide one at a later date." (*Id.*)

## DISCUSSION

**A.    The Convention on Privileges and Immunities of the United Nations**

Under the Convention on Privileges and Immunities of the United Nations, Feb. 13, 1946, entered into force with respect to the United States Apr. 29, 1970, 21 U.S.T. 1418 (the "CPIUN"), the United Nations enjoys absolute immunity from suit unless "it has expressly waived its immunity." CPIUN art. II, § 2. In addition, the International Organizations Immunities Act of 1945, 22 U.S.C. § 288a(b) (the "IOIA"), provides that international organizations designated by the President of the United States receive the "same immunity from suit and every form of judicial

3

process as is enjoyed by foreign governments," and the United Nations has been so designated. *See Brzak v. United Nations*, 597 F.3d 107, 112 (2d Cir. 2010) (holding that "the CPIUN unequivocally grants the United Nations absolute immunity without exception"); *Van Aggelen v. United Nations*, 311 F. App'x 407, 409 (2d Cir. 2009) (explaining that "the United Nations enjoys absolute immunity under the" United Nations Charter, the CPIUN, and the IOIA). The CPIUN is a "self-executing" treaty, meaning that "American courts must recognize the immunity it adopts in domestic litigation." *Brzak*, 597 F.3d at 111–13.

Although senior executives of the United Nations enjoy full diplomatic immunity, CPIUN art. V, § 19, other United Nations employees do not. *See Van Aggelen*, 311 F. App'x at 409 ("[A] U.N. employee, does not enjoy full diplomatic immunity."). Nevertheless, a United Nations employee is shielded by functional immunity under the General Convention for "all acts performed . . . in [the employee's] official capacity." CPIUN, art. V, § 18(a). In addition to the functional immunity available to United Nations employees under the General Convention, under Section 7(b) of the IOIA, United Nations officers and employees are immune from suit and legal process "relating to acts performed by them in their official capacity and falling within their functions as [ ] officers or employees, except insofar as such immunity may be waived by the [United Nations]." 22 U.S.C. § 288d(b).

Plaintiff brings claims against Antonio Guterres, the Secretary-General of the United Nations. As a senior executive of the United Nations, however, he is entitled to full diplomatic immunity, *see* CPIUN art. V, § 19, and functional immunity. *See* 22 U.S.C. § 288d(b). This Court therefore dismisses the claims against Defendant Guterres because he is immune from suit. *See* 28 U.S.C. § 1915(e)(2)(B)(iii).

Plaintiff also sues Rosemarie McClean, the Chief Executive of Pension Administration for the UNJSPF. Because Defendant McClean appears to be a senior executive at the United Nations, she is entitled to the same diplomatic immunity and functional immunity as Defendant Gutteres. CPIUN art. V, § 19; 22 U.S.C. § 288d(b). As to functional immunity, the claims asserted against Defendant McClean appear to arise from acts performed within her official capacity and falling within her function as a United Nations employee; thus, she is immune from this suit. *See Shatsky v. Palestine Liberation Org*, No. 18-CV-12355 (MKV) (DCF), 2021 WL 5770870, at *1 n.2 (S.D.N.Y. Dec. 6, 2021) (noting that United Nations employees who do not enjoy full diplomatic immunity are "shielded by functional immunity" for all acts performed in their official capacities (quoting *Van Aggelen*, 311 F. App'x at 409)); *D'Cruz v. Annan*, No. 05-CV-8918 (DC), 2005 WL 3527153, at *1 (S.D.N.Y. Dec. 22, 2005) *aff'd*, 223 F. App'x 42 (2d Cir. 2007); *Laventure v. United Nations*, 279 F. Supp. 3d 394, 400 (E.D.N.Y. 2017) ("Here, plaintiffs have sued the individual defendants in their official capacities, and there is no indication that any relevant actions of the individual defendants fell outside the scope of their official duties."). This Court therefore dismisses the claims against Defendant McClean on immunity grounds. *See* 28 U.S.C. § 1915(e)(2)(B)(iii).

## B.    Supplemental jurisdiction declined

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Having dismissed the federal claims of which this Court has original jurisdiction, this Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-*

*Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'") (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

## C.    Leave to amend denied

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's complaint cannot be cured with an amendment, this Court declines to grant Plaintiff leave to amend her complaint.

## CONCLUSION

Plaintiff's complaint, filed *in forma pauperis* under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).

This Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

This Court directs the Clerk of Court to enter judgment.

SO ORDERED.

Dated: **APR 0 2 2026**
New York, New York

George B. Daniels
United States District Judge

6